**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT BOSCH GmbH and ROBERT BOSCH LLC, | )<br>) Case No. 25-cv-6646<br>) |
| Plaintiffs, | )<br>) Judge |
| v. | )<br>) |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT**

Plaintiffs ROBERT BOSCH GmbH and ROBERT BOSCH LLC ("Plaintiffs"), through undersigned counsel, hereby complain of the Individuals, Corporations, Partnerships, Unincorporated Associations and others identified in Schedule A attached hereto (collectively, "Defendants"), and for their Complaint hereby allege as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiffs' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products bearing counterfeit versions of Plaintiffs' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

**INTRODUCTION**

3. This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademarks, which are covered by U.S. Trademark Registration Nos. 812,033; 812,075; 812,138; 1,179,992; 1,180,033; 1,226,566; 1,467,187; 1,569,353; 1,637,40; 1,641,945; 1,642,718; 2,088,521; 2,149,986; 2,295,602; 2,364,788; 2,718,833; 2,965,641; 3,078,075; 3,564,853; 3,761,323; 5,440,334; 6,965,965; 7,117,059; and 7,226,804 (the "BOSCH Trademarks").

4. The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiffs' products, while selling inferior imitations of Plaintiffs' products. The Defendant Internet Stores share unique identifiers, such as design elements and

2

similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized BOSCH Products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFFS

6. Plaintiff ROBERT BOSCH GmbH is a German company located at Robert-Bosch-Platz 1, 70839 Gerlingen-Schillerhöhe, Germany. Its U.S. subsidiary, ROBERT BOSCH LLC, is located at 38000 Hills Tech Drive, Farmington Hills, MI 48331.

7. Plaintiff ROBERT BOSCH GmbH develops and Plaintiff ROBERT BOSCH LLC markets, sells and distributes BOSCH products in the United States. Founded in 1886 by Robert Bosch, the Bosch Group is a leading global supplier of technology and services. Its operations are divided into four business sectors: Mobility, Industrial Technology, Consumer Goods, and

Energy and Building Technology. With its business activities, the company aims to use technology to help shape universal trends such as automation, electrification, digitalization, connectivity, and an orientation to sustainability. Having established a presence in North America in 1906, today the Bosch Group employs more than 41,000 associates in more than 100 locations in the North American region. According to preliminary figures, the North American companies of the Bosch Group generated consolidated sales of $17.4 billion in the U.S., Mexico and Canada in 2024. Plaintiff ROBERT BOSCH GmbH is the owner of the U.S. trademark registrations and ROBERT BOSCH LLC is the official source of certain BOSCH Products in the United States, which include the following:

https://www.bosch.us/



Products and services   Our company   Careers

Home > Products and services

Bosch in the USA

# Products and services

In your car, at home, or at work — Bosch technology shapes many areas of life.



## Mobility

Bosch develops innovative solutions that facilitate new mobility offerings. Whether for private or commercial vehicles, multimodal transportation services, fleet management, or smart transport infrastructure, Bosch brings together vehicle technology, the data cloud, and services to offer complete mobility solutions.

To our mobility offerings

## At home

Bosch offers you individual solutions for your home to make life a bit easier every day.

To our offerings for your home





## Industry and trades

Bosch offers innovative products and services for industry and trades.

To our offerings for industry and trades

## Connected products and services

Find out more on our global website

8. Plaintiffs are the owners of U.S. Trademark Registration Nos. 812,033; 812,075; 812,138; 1,179,992; 1,180,033; 1,226,566; 1,467,187; 1,569,353; 1,637,401; 1,641,945; 1,642,718; 2,088,521; 2,149,986; 2,295,602; 2,364,788; 2,718,833; 2,965,641; 3,078,075; 3,564,853; 3,761,323; 5,440,334; 6,965,965; 7,117,059; and 7,226,804 (hereinafter, the "BOSCH Trademarks). The Registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the BOSCH Trademarks are attached hereto as Exhibit 1.

| Registration Number | Registered Trademark | International Classes |
|---|---|---|
| 812,033 | BOSCH | 7, 9, 11, 12 and 15 |
| 812,075 | BOSCH | 7 |
| 812,138 | BOSCH | 11 |
| 1,179,992 | BOSCH | 11 |
| 1,180,033 | BOSCH | 12 |
| 1,226,566 | BOSCH | 11 |
| 1,467,187 | BOSCH | 11 |
| 1,569,353 | BOSCH | 9 |
| 1,637,401 | BOSCH | 7 and 12 |
| 1,641,945 | BOSCH | 9 |

| | | |
|---|---|---|
| 1,642,718 | BOSCH | 12 |
| 2,088,521 | BOSCH | 9 |
| 2,149,986 | BOSCH | 6, 7, 9 and 20 |
| 2,295,602 | BOSCH | 28 |
| 2,364,788 | BOSCH | 7, 9 and 11 |
| 2,718,833 | BOSCH | 9 |
| 2,965,641 | BOSCH | 7 |
| 3,078,075 | BOSCH | 9 |
| 3,564,853 | **BOSCH** | 7, 9 and 11 |
| 3,761,323 | HYDRO BOOST | 12 |
| 5,440,334 | BOSCH | 7, 9, 11, 12, 37, 38, 39, 41 and 42 |
| 6,965,965 | BOSCH | 25 |
| 7,117,059 | BOSCH | 10, 28, 44 and 45 |
| 7,226,804 | [color spectrum design] | 7, 9, 10, 11, 12, 37, 42 and 44 |

9. The BOSCH Trademarks are distinctive and identify the merchandise as goods from Plaintiffs. The registrations for the BOSCH Trademarks constitute prima facie evidence of their validity and of Plaintiffs' exclusive right to use the BOSCH Trademarks pursuant to 15 U.S.C. § 1057(b).

10. The BOSCH Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and have been continuously used and never abandoned.

11. The BOSCH marks are and have been the subject of substantial and continuous marketing and promotion by Plaintiffs in the industry and to consumers. Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the BOSCH Trademarks. Plaintiffs' promotional efforts include — by way of example, but not limitation — substantial website and social media sites and point of sale materials. As a result, products bearing the BOSCH Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

## THE DEFENDANTS

12. Defendants are individuals and business entities who, upon information and belief, reside primarily in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit BOSCH Products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

13. The success of the BOSCH brand has resulted in its counterfeiting. Plaintiffs have identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms such as Amazon, Temu and Walmart, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit BOSCH Products to consumers in this Judicial District and throughout the United States. Defendants have

persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2024 was over $5.4 billion, up from $2.8 billion in 2023. According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the 2021 study), Internet websites like the Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

14. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine BOSCH Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Amazon, Temu and Walmart. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and Amazon, Temu and Walmart logos.

15. Plaintiffs have not licensed or authorized Defendants to use the BOSCH Trademarks, and none of the Defendants are authorized retailers of genuine BOSCH Products.

9

16. Upon information and belief, Defendants also deceive unknowing consumers by using the BOSCH Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for BOSCH Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Store listings show up at or near the top of relevant search results and misdirect consumers searching for genuine BOSCH Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down. As such, Plaintiffs also seek to disable Defendant Online Marketplace Accounts owned by Defendants that are the means by which the Defendants could continue to sell counterfeit BOSCH Products.

17. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Online Marketplace Accounts are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Online Marketplace Accounts use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts. In addition, the counterfeit BOSCH Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit BOSCH Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same online marketplace account registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

19. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled explosive growth in the number of small packages of counterfeit goods shipped through the mail and express carriers. This growth closely correlates to the growth of the ecommerce industry which now makes up 16.4% of all

retail transactions as reported by the Census Bureau of the U.S. Department of Commerce. According to the Department of Homeland Security's 2024 Intellectual Property Rights Seizures Report, the vast majority of Intellectual Property Rights seizures continue to take place within the express consignment and mail shipping methods. 97% of all cargo seizures were made in de minimis shipments.

20. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and Amazon, Temu and Walmart accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Amazon, Temu and Walmart accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Amazon, Temu and Walmart transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based Amazon, Temu and Walmart accounts to China-based bank accounts outside the jurisdiction of this Court.

21. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the BOSCH Trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit BOSCH Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit BOSCH Products into the United States, including Illinois.

22. Defendants' use of the BOSCH Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit BOSCH Products, including the sale of counterfeit BOSCH Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

23. Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1-22 of this Complaint.

24. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered BOSCH Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. BOSCH Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' products provided under the BOSCH Trademarks.

25. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the BOSCH Trademarks without Plaintiffs' permission.

26. Plaintiff ROBERT BOSCH GmbH is the registered owner of the BOSCH Trademarks (U.S. Registration Nos. 812,033; 812,075; 812,138; 1,179,992; 1,180,033; 1,226,566; 1,467,187; 1,569,353; 1,637,40; 1,641,945; 1,642,718; 2,088,521; 2,149,986; 2,295,602; 2,364,788; 2,718,833; 2,965,641; 3,078,075; 3,564,853; 3,761,323; 5,440,334; 6,965,965; 7,117,059; and 7,226,804). The United States Registrations for the BOSCH Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the BOSCH Trademarks and are willfully infringing and intentionally selling counterfeit products using the BOSCH Trademarks. Defendants' willful, intentional, and unauthorized use of the BOSCH Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

27. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

28. The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit BOSCH Products.

29. Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known BOSCH Trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

30. Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1-29 of this Complaint.

31. Defendants' promotion, marketing, offering for sale, and sale of counterfeit BOSCH Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' counterfeit BOSCH Products by Plaintiffs.

32. By using the BOSCH Trademarks in connection with the sale of counterfeit BOSCH Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit BOSCH Products.

33. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit BOSCH Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34. Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510/1, et seq.)

35. Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1-34 of this Complaint.

36. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit BOSCH Products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine BOSCH Products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

37. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

38. Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the BOSCH Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any products that are not genuine BOSCH Products or are not authorized by Plaintiffs to be sold in connection with the BOSCH Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any products as genuine BOSCH Products or any other products produced by Plaintiffs that are not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the BOSCH Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit BOSCH Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

   d. further infringing the BOSCH Trademarks and damaging Plaintiffs' goodwill;

   e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any trademark of Plaintiffs, including the BOSCH Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof; and

    f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit BOSCH Products;

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to filed with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through f, above;

3) Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as Amazon, Temu and Walmart, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Online marketplace accounts, and online marketplace account registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit BOSCH Products using the BOSCH Trademarks, including any accounts associated with the Defendants listed on Schedule A; and

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit BOSCH Products using the BOSCH Trademarks;

4) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BOSCH Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the BOSCH Trademarks;

6) That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

                              Respectfully submitted,

Dated: June 17, 2025

                        By:    s/Michael A. Hierl
                                Michael A. Hierl (Bar No. 3128021)
                                William B. Kalbac (Bar No. 6301771)
                                Robert P. McMurray (Bar No. 6324332)
                                John Wilson (Bar No. 6341294)
                                Elizabeth A. Miller (Bar No. 6339398)
                                Hughes Socol Piers Resnick & Dym, Ltd.
                                Three First National Plaza
                                70 W. Madison Street, Suite 4000
                                Chicago, Illinois 60602
                                (312) 580-0100 Telephone
                                (312) 580-1994 Facsimile
                                mhierl@hsplegal.com

                                Attorneys for Plaintiffs
                                ROBERT BOSCH GmbH and
                                ROBERT BOSCH LLC

**CERTIFICATE OF SERVICE**

    The undersigned attorney hereby certifies that a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on June 17, 2025.

                                                       s/Michael A. Hierl